**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOE BALTAS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No. 3:22-CV-38 (MPS)** |
| | : | |
| ALEXANDER DONES, et al., | : | |
| Defendants. | | |

<u>MEMORANDUM OF DECISION</u>
<u>ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>
<u>AND MOTION FOR SPOLIATION SANCTIONS</u>

In this action, Plaintiff Joe Baltas, a sentenced inmate housed within the custody of

Connecticut Department of Correction ("DOC"), asserts federal and state law claims against

Officer Alexandro Dones, Officer Gervacio Negron, Officer Yavuz Usluca, Lieutenant William

Rodriguez, Correction Officer David Savoie, and Correction Officer Olson.[1] Compl., ECF No.

1. Specifically, Plaintiff is proceeding on the following claims: (1) Eighth Amendment excessive

force against Officers Dones, Negron and Usluca and Lieutenant Rodriguez in their individual

capacities; (2) Eighth Amendment deliberate indifference to his health and safety against

Officers Dones, Negron and Usluca and Lieutenant Rodriguez in their individual capacities; (3)

Eighth Amendment deliberate indifference his to health and safety against Officers Savoie and

Olson in their individual capacities; (4) First Amendment retaliation claims against Officers

Dones, Savoie and Olson in their individual capacities; and (5) state law claims of assault and

battery and recklessness against Officers Dones, Negron, Usluca and Savoie and Lieutenant

Rodriguez in their individual capacities. Initial Review Order ("IRO"), ECF No. 13; Order, ECF

---

[1] The Court notes that the correct spelling of this Defendant's last name is Olson. Defs. Ex. H, Olson Decl., ECF No. 144. The clerk is instructed to make this correction on the docket.

1

No. 151.

On November 21, 2022, Plaintiff filed a motion for spoliation sanctions. ECF No. 67. On January 30, 2023, Plaintiff filed his motion for summary judgment. Pl. Mot. for Summ. Judg., ECF No. 101. In light of the parties' intent to engage in settlement negotiations, the Court terminated all pending motions without prejudice to reinstatement if a settlement could not be reached. Order, ECF No. 115. After the settlement negotiations failed, the Court reinstated Plaintiff's motion for spoliation sanctions and motion for summary judgment, *see* Order, ECF No. 121, and afforded Defendants until July 14, 2023 to respond to Plaintiff's motion for summary judgment. Order, ECF No. 124. On July 14, 2023, Defendants filed a timely opposition memorandum styled as an opposition and a cross motion for summary judgment. Defs. Mem, ECF No. 139. On August 1, 2023, Plaintiff filed his reply. Pl. Reply, ECF No. 146.

## I.    FACTUAL BACKGROUND

The following factual background is taken from the complaint,[2] the statements of fact filed pursuant to Local Rule 56(a)1 and (a)2[3] and the underlying evidentiary record**,** including the Rockville Courthouse surveillance video footage.[4]

---

[2] The Court's review of the record includes the allegations of the verified complaint. *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint . . . may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

[3] As discussed further, Defendants apparently neglected to submit a Local Rule 56(a)1 statement to support their cross motion for summary judgment. Nor have they filed a Notice to Self-Represented Litigant as required by this District's Local Rule of Civil Procedure 56(b).

[4] Where the parties present conflicting versions of an incident and video evidence of the incident has been submitted on a motion for summary judgment, the court must view the facts "in the light depicted" by the video of the incident. *See Scott v. Harris,* 550 U.S. 372, 380–81 (2007).

Plaintiff is a state prisoner who has been incarcerated since 2006. Pl. Rule 56(a)1 at ¶ 1, ECF No. 103.[5] Defendants Dones, Negron, and Usluca are DOC High Security Transportation Officers in the Correctional Transportation Unit ("CTU"). *Id.* at ¶¶ 2-4. Defendant Rodriguez is a Correctional Lieutenant in the CTU Specialized Transportation Unit. *Id.* at ¶ 5. An inmate on the Specialized Transportation list is designated for transport with increased custody and security because that inmate poses a heightened threat due to some prior incident. *Id.* at ¶14. Prior to September 2018, Plaintiff had been transported to and from court or between facilities by correctional staff from the facility where he was housed rather than by CTU Specialized Transportation. *Id.* at ¶ 12.

On September 13, 2018, Plaintiff, who was housed at Corrigan-Radgowski Correctional Center ("Corrigan"), reported to the Corrigan Admitting and Processing ("A/P") area for a scheduled superior court appearance at Rockville, Connecticut. *Id.* at ¶ 16. Plaintiff was met by Defendants Dones, Negron and Usluca (the "Team"), who were all wearing full tactical gear and ballistic vests. *Id.* at ¶ 17. Lieutenant Rodriguez had personally assigned the Team for Plaintiff's transport. *Id.* at ¶ 19. The Team stripped Plaintiff and placed him in full High Security Special Transport restraints, which included chubb cuffs tied to a waist chain with a tether chain to connect the cuffs to the shackles. *Id.* at ¶ 20. This was the first time that Plaintiff had been subjected to such restraints—chubb cuffs and waist chain—that restricted all bodily movement. *Id.* at ¶¶ 20, 70. Plaintiff states that he observed a "Punisher" emblem on Dones's

---

[5] Generally, the Court cites only the relevant paragraph in the Local Rule 56(a)1 Statement where a fact is not disputed. The page numbers cited in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

ballistic vest. *Id.* at ¶ 21. He claims, and Defendants dispute, that the Punisher emblem signifies

a correctional officer who engages in violence against inmates. *Id.* at ¶ 21; Defs. Rule 56(a)2 at

¶ 21, ECF No. 139-1.

      After these restraints were applied without incident, Plaintiff was escorted to the

transport vehicle. Pl. Rule 56(a)1 at ¶ 22. The transport vehicle has a rear passenger cab that is a

steel box with a metal floor, and two inmate compartments separated in the middle by a steel

wall; each inmate compartment has a metal bench with a seatbelt bolted into the bench. *Id.* at ¶

23. The rear cab has neither ventilation nor windows. *Id.* After Plaintiff entered the inmate cab,

Defendant Usluca secured Plaintiff with the seatbelt. *Id.* at ¶ 24.

      Plaintiff was transported to the Rockville Superior Court without incident. *Id.* at ¶ 25.

Plaintiff claims, and Defendants deny, that on the way to the court lockup cell area, Defendant

Negron squeezed his arm prior to entering the elevator. *Id.* Defs. Rule 56(a)2 at ¶ 25. The

surveillance video footage shows that a member of the Team (presumably Negron) held onto

Plaintiff, that Plaintiff turned to look at Negron's hold on him after they entered the elevator

corridor, and that Negron later let go of Plaintiff while waiting for the elevator. Defs. ex. J,

Rockville Sallyport and Elevator & Corridor, 10:08:37-10:08:50 AM, ECF No. 140.

      After Plaintiff's hearing concluded, Plaintiff returned to the lock up cell. Pl. Rule 56(a)1

at ¶ 26. At approximately 11:28 AM, the Team entered Plaintiff's cell and applied his full

restraints. *Id.* at ¶ 27. Plaintiff claims, and Defendants dispute, that Negron used physical force

by tightly grabbing Plaintiff's arms and forcing his limbs in a manner that caused him pain,

while Dones applied the restraints in an unreasonably tight manner. *Id.* Defendants maintain

that Plaintiff was getting aggressive when Negron joined to assist the other Team members in applying the restraints. Defs. Rule 56(a)2 at ¶ 27.

Defendant Lieutenant Rodriguez was present in the area. Pl. Rule 56(a)1 at ¶ 28; Defs. Rule 56(a)2 at ¶ 28. Defendants deny Plaintiff's representation that Lieutenant Rodriguez was observing and listening to Plaintiff's interactions with the Team during the application of his restraints. *Id.*

Plaintiff claims that while in the elevator, the Team members boxed him in and exhibited aggressive stances; and that later, he told Negron to stop hurting him after Negron "violently" seized his upper arm and dug his fingernails into his arm even breaking the skin. Pl. Rule 56(a)1 at ¶¶ 29-31.[6] Plaintiff asserts further that he told Negron to stop forcing him forward with a stride beyond the length of the chain, and that he stopped walking due to his pain, but Dones and Negron forced him forward against his will. *Id.* at ¶¶ 31, 34-35; Defs. Rule 56(a)2 at ¶¶ 34.

According to Defendants, the Team members assumed non-hostile stances in the elevator; Plaintiff pulled away from Negron (causing Negron to lose his grip) and told Negron to "get the fuck off";[7] and Negron assisted Plaintiff to move forward at a walking pace within the length of the chains. Defs. Rule 56(a)2 at ¶¶ 29, 30, 31, 34. Defendants maintain that Plaintiff posed a threat after he swore at and pulled away from Negron, and that they only lifted

---

[6] Plaintiff claims that Defendants were using a tactic designed to cause an inmate to pull away in order to justify the use of force. *Id.* at ¶ 32.

[7] The surveillance footage (which lacks sound) only shows that Plaintiff turned his head, and the Court cannot discern Plaintiff's facial expression or lip movement. Defs. Ex. J, Rockville Elevator & Corridor, 11:33:00 to 11:33:01 AM.

him up "slightly to escort him to the van" due to his refusal to walk. Defs. Rule 56(a)2 at ¶¶ 34-35.

The Rockville Courthouse surveillance video footage of the elevator interior shows: Negron leaning his arm against the gate to the compartment where Plaintiff was standing; Usluca with his arms by his side carrying paperwork; and Dones following Plaintiff out of the elevator. Defs. Ex. J, Rockville Elevator #4, 11:32:33 to 11:32:59 AM; *see* Defs. Rule 56(a)2 at ¶ 29 (identifying positions of Negron and Usluca). The Court is not able to determine from the surveillance footage whether, as Defendants claim, Negron lost his grip of Plaintiff's arm after Plaintiff assertedly pulled away upon leaving the elevator. Defs. Ex. J, Rockville Elevator& Corridor, 11:32:59 to 11:33:02 AM. Defs. Rule 56(a) at ¶ 30. The footage later shows Negron and Dones either assisting or forcing Plaintiff to move forward as they entered and proceeded toward the transport van in the Rockville sallyport; Plaintiff appears to exhibit some resistance by leaning backwards, but it is not evident from the video whether Plaintiff was forced to move his legs further than the length of the chain. Defs. Ex. J, Rockville Sallyport, 11:33:08-11:33:13 AM. The surveillance footage appears to show that Plaintiff was subsequently lifted onto the van bumper, and that Usluca later stepped up with Plaintiff. Defs. Ex. J, Rockville Sallyport, 11:33:13 to 11:33:15 AM; *see* Pl. Rule 56(a)1 at ¶¶ 35-36, 38. Defendants represent that Dones and Negron placed Plaintiff on the back of the van because he was actively resisting and refusing to bend down to enter the rear cab. Defs. Rule 56(a)2 at ¶ 36.

Plaintiff claims that Usluca struck him in the back of the head as he stood on the rear fender, while Dones simultaneously leaned down and grabbed the tether chain between Plaintiff's legs, thereby pulling Plaintiff's legs out from under him and causing him to fall face

down. Pl. Rule 56(a)1 at ¶ 38. Defendants do not dispute that Dones leaned down and grabbed the tether chain between Plaintiff's legs causing Plaintiff's fall. Defs. Rule 56(a)2 at ¶ 38. They claim that Usluca intended to guide Plaintiff's head but never made physical contact with Plaintiff, and that the Team instructed Plaintiff to stop resisting. *Id.* After review of the surveillance footage, the Court cannot discern whether Usluca's hand made contact with the back of Plaintiff's head just prior to his fall. Defs. Ex. J, Rockville Sallyport, 11:33:16 to 11:33:17 AM.

It is undisputed that Plaintiff struck his head on the metal bench in the interior of the rear cab. Pl. Rule 56(a)1 at ¶ 40. Plaintiff represents that he was rendered unconscious due to his fall; that Usluca struck him after his fall; that Dones used the chain to cause him further pain; and that Negron brandished his mace while he was in full restraints and not resisting. *Id.* at ¶¶ 40-42. Defendants maintain that Usluca merely secured Plaintiff's top torso to stop him from making his body bigger; that Dones held Plaintiff's legs and chain to stop him from kicking or making himself bigger; and that Negron assisted in ushering Plaintiff onto the floor of the van and brandished his mace to induce Plaintiff to stop his resistance. Defs. Rule 56(a)2 at ¶ 41.

Plaintiff claims further that the Team forced him into the rear cab leaving him on the floor in full restraints without securing his seatbelt before they shut and locked the cage door. Pl. Rule 56(a)1 at ¶ 43. Defendants counter that the Team merely "assisted" Plaintiff into the rear cab. Defs. Rule 56(a)2 at ¶ 43.

The surveillance video footage relevant to the period after Plaintiff's fall shows only the backs of the Team holding Plaintiff's legs or the chain, while another member of the Team

7

leaned over Plaintiff's upper torso. Defs. Ex. J, Rockville Sallyport, 11:33:17 to 11:33:37 AM.
Although it is not clear, the video suggests that Plaintiff was resisting being pushed into the rear
cab while he was face down. The Team members then appeared to move Plaintiff's body
further into the rear cab while Plaintiff remained face down. *Id.* at 11:33:37 to 11:33:40. Two
Team members then climbed on to the bumper, while a third Team member stood in a bent
position in the cab interior. *Id.* at 11:33:40 to 11:33:50. Finally, all Team members climbed
down from rear cab, and secured the rear cab cage and doors. *Id.* at 11:33:50 to 11:34:20.

Each Team member was aware that they were required to secure Plaintiff in a seatbelt to
ensure his safety during transport; they admit that they failed to so. Pl. Rule 56(a)1 at ¶ 44.
Lieutenant Rodriguez, who had been notified about an incident in the sallyport, entered the
sallyport doorway and spoke to Negron from a distance for less than two seconds. Pl. Rule
56(a)1 at ¶¶ 37, 45; Defs. Rule 56(a)2 at ¶ 37. Lieutenant Rodriguez avers that when he arrived
at the sallyport, "[t]here did not appear to be a situation with Plaintiff as he was secured in the
van[,]" that Negron gave him a "thumbs up[,]" and that he was informed that "Plaintiff needed
help getting inside the vehicle." Defs. Ex. F, Rodriguez Decl. at ¶ 19, ECF No. 142.

With Dones driving the transport van, Usluca and Negron sat in the forward truck cab;
the Team then commenced Plaintiff's transport despite their knowledge that he was on the floor
of the cab in full restraints without any seatbelt. Pl. Rule 56(a)1 at ¶ 46. Plaintiff maintains that
the Team then subjected him to "a rough ride" by taking turns sharply, making hard stops, and
turning up the heat and the radio volume. *Id.* at ¶ 47; *see* Compl. at ¶¶ 82-83. He asserts that he
sustained injuries due to his bouncing around in the rear metal cab during the transport. Pl. Rule
56(a)1 at ¶ 47.

According to Defendants, the Team reported that the drive back was "fine" except for the banging they heard in the back of the vehicle caused by Plaintiff. Defs. Rule 56(a)2 at ¶ 47. Defendants claim that Negron saw Plaintiff sitting upright in the cab and not bouncing around. *Id.*

According to Plaintiff, Negron responded to his call for help with: "This is what happens to inmates who assault staff." Pl. Rule 56(a)1 at ¶ 48. Defendants admit that the Team did not stop to check on Plaintiff's wellbeing or secure his safety. Pl. Rule 56(a)1 at ¶ 48; Defs. Rule 56(a)2 at ¶ 48. Defendants also assert that Negron and Dones reported hearing Plaintiff "banging himself" in the vehicle rear cab, but no Team members reported having spoken to him during the ride. *Id.*

During the ride, Negron had a telephone conversation with Lieutenant Rodriguez, at which time Negron expressed that they could hear Plaintiff banging in the rear cab. Pl. Rule 56(a)1 at ¶ 49; Defs. Rule 56(a)2 at ¶ 49. Defendants represent that Negron told Lieutenant Rodriguez that Plaintiff was "banging himself" (but cite no evidence to support this assertion). *Id.*

Upon entry to the Corrigan A/P area, Plaintiff reported that he had been assaulted. Pl. Rule 56(a)1 at ¶ 52. Lieutenant Palmer took the Team into the back room to speak to them. *Id.* at ¶ 53. Plaintiff also provided Lieutenant Palmer with a brief statement. *Id.* at ¶ 55.[8] After he took photographs of Plaintiff's injuries, Lieutenant Palmer escorted him to the medical unit. *Id.*

---

[8] Plaintiff attempted unsuccessfully to secure video footage of the events occurring upon his entry after transport to Corrigan. *Id.* at ¶ 56. Plaintiff seeks sanctions for spoliation of the video footage related to these events.

at ¶ 54. At the medical unit, Plaintiff had his wounds cleaned and was ordered to remain in the medical unit on an 18-to-24-hour concussion watch. *Id.*

Plaintiff claims, and Defendants deny, that the Team was found culpable of misconduct in connection with this incident, and they were formally disciplined for failing to report the use of force and for failure to secure Plaintiff's seatbelt. Pl. Rule 56(a)1 at ¶¶ 63-65; Defs. Rule 56(a)1 at ¶¶ 63-65. Defendant Usluca avers that he was found to have acted in noncompliance with DOC Directives because he failed to describe the forced used on Plaintiff in his incident report and because he failed to ensure that Plaintiff was seatbelted. Defs. Ex. C, Usluca Decl. at ¶¶ 40-42, ECF No. 139-3. He admits that he was sanctioned with a one-day suspension but received a reprimand in lieu of the one-day suspension under a stipulated agreement between DOC and his union. *Id.* at ¶ 43. Defendant Negron attests to receiving "a letter from Roger Bowles stating that [he] was being disciplined with [a] one day suspension for just cause, as evidence[d] by [his] violations of the directives concerning the transport of Plaintiff on September 13, 2018." Defs. Ex. D, Negron Decl. at ¶ 35, ECF No. 141. He explains that "as part of a stipulated agreement between DOC and [his] union, he was only issued a written reprimand in lieu of a suspension." *Id.*

Plaintiff claims that after he reported this incident involving the Team, Dones returned to the A/P area and locked eyes with him, mouthed threats to him, and paced in front of Plaintiff's cell while making verbal threats that Plaintiff should "take it back or we will get at you." Pl. Rule 56(a)1 at ¶ 53. He asserts that Correction Officers Savoie and Olson subjected him to further retaliation by allegedly denying him meals, throwing objects at him, threatening to kill him with a noose; turning off his water in his cell; turning on his lights to cause sleep

deprivation; and repeatedly threatening him in order to pressure him to retract his complaints

against the Team. Pl. Rule 56(a)1 at ¶ 67.[9]  Defendants dispute such assertions of retaliatory

conduct. Defs. Rule 56(a)2 at ¶¶ 53, 67.

## II.    LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute

as to any material fact and the moving party is entitled to judgment as a matter of law. Rule

56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107,

113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at

113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the court of the basis for its

motion and identifying the admissible evidence it believes demonstrates the absence of a genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

meets this burden, the nonmoving party must set forth specific facts showing that there is a

genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on

conclusory allegations or unsubstantiated speculation but must come forward with specific

evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v.

Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).

To defeat a motion for summary judgment, the nonmoving party must present such evidence as

would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.

2000).

---

[9]  Plaintiff unsuccessfully sought video preservation for footage related to these events. *Id.* at ¶ 68 .

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

In the context of cross-motions for summary judgment, the same standard is applied. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). However, in deciding each motion, the court must construe the evidence in the light most favorable to the non-moving party. *Id.*

## III.   DISCUSSION

Plaintiff claims that he is entitled to entry of summary judgment on the merits of his Eighth Amendment, First Amendment, and state law assault and battery claims.[10]  Pl. Mem., ECF No. 101-1. Defendants argue that Plaintiff failed to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA"), that Plaintiff cannot prevail on the merits of his claims, and that qualified immunity shields Defendants from liability. Defs. Mem., ECF No. 139.

### A.   Defendants' Motion for Summary Judgment (ECF No. 139)

Defendants have filed a document entitled opposition and cross motion for summary judgment. Defs. Mem, ECF No. 139. Local Rule 56 requires that each party seeking summary judgment attach to its motion "a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no

---

[10]  The Court permitted Plaintiff to proceed on a claim of wanton, malicious, and reckless conduct after he filed his motion for summary judgment. *See* Order, ECF No. 151.

genuine issue to be tried." L.R. 56(a)(1). In addition, Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." A Local Rule 56(a)2 statement "must also include a separate section entitled 'Additional Material Facts' setting forth . . . any additional facts, not previously set forth in responding to the movant's Local Rule 56(a)1 Statement, that the party opposing summary judgment contends establish genuine issues of material fact precluding judgment in favor of the moving party." L.R. 56(a)(2)(ii). A party's "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions, *including, when the movant fails to comply, an order denying the motion for summary judgment*." L.R. 56(a)(3) (emphasis added). Finally, Local Rule 56(b) requires that "[a]ny represented party moving for summary judgment against a self-represented party" "file and serve, as a separate document, . . . a 'Notice to Self-Represented Litigant Concerning Motion for Summary Judgment.'"

Defendants have not complied with Rule 56(b)'s requirement for a "Notice to Self-Represented Litigant." And they have not attached to their asserted cross motion for summary judgment a Rule 56(a)1 statement in compliance with Local Rule 56(a).[11] Instead, they have submitted only a Rule 56(a)2 statement that responds to Plaintiff's Local Rule 56(a)1 statements

---

[11] The Court notes that their memorandum of law makes reference in places to a Rule 56(a)1 statement in support of their arguments, *see* Defs. Mem. at 13-17, 22, 30, but they have submitted no such statement.

of facts not in dispute and also contains a statement of "Additional Material Facts" to establish genuine issues of material fact in dispute.[12]

Even *pro se* litigants must comply with procedural rules, although the Court may more frequently excuse non-compliance by *pro se* litigants. *Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14-cv-01603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017). However, "a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion." *Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 503 (D. Conn. 2013). In deciding whether to deny a motion for summary judgment based on failure to comply with the local rules, courts in this circuit consider whether the court can fairly determine the undisputed facts of the case without a Rule 56(a)1 statement. *Capsalors v. Prudential Ins. Co.*, No. 3:20-CV-00699 (SVN), 2022 WL 959747, at *7 (D. Conn. Mar. 30, 2022).

In this instance, Defendants' counsel is an experienced attorney who should be well versed in the Local Rules. Plaintiff is also an experienced litigator, having filed and litigated a large number of actions in this and other Courts. But as a self-represented litigant, he is entitled under this District's Rules to the notice provided under Local Rule 56(b). Defendants' failure to comply with Local Rule 56 undermines the District Court's intent to ensure that self-represented parties have notice of the requirements for filing an opposition to a motion for summary judgment.

Defendants' failure to submit a Local Rule 56(a)1 statement hinders the resolution of the

---

[12] Plaintiff's Reply objected to Defendants' Local Rule 56(a)2 statement as procedurally noncompliant with the Local Rules of Civil Procedure, although on different grounds. Pl. Reply at 5-6, ECF No. 146.

cross motions for summary judgment. Even if the Court were to construe Defendants' statements of "Additional Material Facts" as a Local Rule 56(a)1 statement, Local Rule 56(a) does not direct a response to such statements. Thus, absent a Local Rule 56(a)1 statement, Plaintiff has no opportunity to refute any asserted statements of undisputed facts. Further, Defendants' "Additional Material Facts" do not even contain facts relevant to their nonexhaustion argument. *See* Defs. Rule 56(a)2, ECF No. 139-1. The Court should not have to comb the record on its own to determine whether Defendants have presented undisputed issues of fact entitling them to entry of summary judgment.

"On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), and Defendants' failure to file a Rule 56(a)(1) statement has prevented them from carrying their burden for their summary judgment motion. Thus, the Court will deny Defendants' cross motion for summary judgment.

### B.   Plaintiff's Motion for Summary Judgment [ECF No. 101]

The Court now considers whether the record entitles Plaintiff to summary judgment on his claims that Defendants violated his Eighth and First Amendment rights and subjected him to assault and battery.

### 1.   Eighth Amendment

Plaintiff's complaint raised plausible claims of Eighth Amendment excessive force and deliberate indifference to his health and safety against Defendants Dones, Negron, Usluca and

Rodriguez in connection with his transport; and against Savoie and Olson in connection with his conditions of confinement. IRO at 44.

      **a.**      **Excessive Force**

When an inmate alleges use of excessive force by a correctional officer, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). A *de minimis* use of force will rarely be sufficient unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)). The extent of the inmate's injuries as a result of the defendant's conduct is not a critical component of an Eight Amendment excessive force claim. *See Wilkins,* 559 U.S. at 37 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7 (internal quotation marks omitted).

Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019). "Liability attaches on the theory that the officer, by failing to intervene, becomes a

'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).

### High Security Restraints

On initial review, Plaintiff plausibly alleged an Eighth Amendment excessive force violation on the basis of his alleged placement in high security Special Transportation restraints without legitimate penological reasons. IRO at 21. Defendants do not dispute that Plaintiff had not previously been subjected to the High Security Special Transportation restraints. Pl. Rule 56(a) at ¶ 70; Defs. Rule 56(a) at ¶ 70. But Lieutenant Rodriguez avers that the Tactical Operations Unit identified Plaintiff as an inmate on the High Security Specialized Transportation List due to his high profile, disciplinary history, and "MC-Diablos gang affiliation[;]" and he explains that inmates are restrained for transportation according to their classification status under Administrative Directive 6.4. Defs. Ex. F, Rodriguez Decl. at ¶¶ 5, 10. I find that the record raises a genuine issue of material fact about whether Plaintiff's High Security Special Transportation restraints were applied absent legitimate penological reason, and so I deny Plaintiff's motion for a judgment as a matter of law that such high security restraints constituted excessive force.

In addition, Plaintiff claims that the Team members applied excessive force while applying the restraints after Plaintiff returned to the lock up cell. *See* Pl.'s Rule 56(a)1 at ¶ 27. But Usluca avers that Plaintiff was "passive aggressive" in complying with direct orders and resisted orders for him to comply. Defs. Ex. C, Usluca Decl. at ¶ 20.[13] And Negron avers that he received a request from a marshal to remove Plaintiff from the Rockville Courthouse due to his

---

[13] Defendants purport to have submitted Dones's declaration as an exhibit E. *See* Defs. Rule 56(a)2 at 14 n.1, ECF No. 139-1. But their opposition and cross motion for summary judgment does not attach any exhibit E or declaration from Dones.

"acting out" and "tearing up his cell" after his court appearance, and that Plaintiff "took his time complying with the [T]eam's order during restraint application." Defs. Ex. D, Negron Decl. at ¶¶ 17-18.

The Court cannot resolve whether Defendants acted with excessive force without assessing the credibility of the competing representations. And the Court cannot render a credibility determination on a motion for summary judgment. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). So the record fails to establish as a matter of law that the Team members misused force without legitimate penological reason while applying Plaintiff's restraints.

Accordingly, the present record demonstrates that disputed issues of material fact preclude entry of summary judgment in Plaintiff's favor on his Eighth Amendment excessive force claims in connection with his restraints.

**Treatment During Escorts and Placement in Transport Van**

Plaintiff asserts an Eighth Amendment violation based on Negron's allegedly inflicting pain on him while restrained and based on his treatment by the Team members in placing him in the vehicle. IRO at 21.

The record evidence, including the Rockville Courthouse surveillance video footage, fails to establish an Eighth Amendment violation as a matter of law based on Negron's allegedly inflicting pain on Plaintiff during the escort by digging into his arm or by making Plaintiff walk a stride longer than the length of his chain. *See* Defs. Ex. J, Rockville Booking Room Corridor, Prison Elevator, Elevator #4, Elevator & Corridor, and Sallyport, 10:08:37-10:08:50 AM,

11:32:13 to 11:33:13 AM. Furthermore, after several reviews of the Rockville sallyport surveillance video footage, the Court cannot determine whether the Team Defendants acted maliciously and sadistically to harm Plaintiff when they caused him to fall and loaded him into the rear cab of the transport van. Defs. Ex. J, Rockville Sallyport, 11:33:13 to 11:34:20 AM.

So the Court cannot conclude as a matter of law that Negron, Dones, and Usluca violated the Eighth Amendment by subjecting Plaintiff to excessive force while escorting him and loading him into the transport van. The Court must deny Plaintiff's motion for summary judgment because the record raises disputed issues of fact essential to resolution of his Eighth Amendment excessive force claims.[14]

### b.    Deliberate Indifference

The Court permitted Plaintiff to proceed on Eighth Amendment claims against Officers Negron, Dones, and Usluca, and Lieutenant Rodriguez for deliberate indifference to his safety in connection with his transport; and against Olson and Savoie for deliberate indifference to his conditions of confinement. IRO at 23-24.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody[.]" *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted). Prison conditions that "involve the wanton and unnecessary infliction of pain" constitute cruel and unusual punishment under "the

---

[14] Absent a demonstrated Eighth Amendment excessive force violation by the Team members, Plaintiff cannot establish that Lieutenant Rodriguez failed to intervene in any alleged misuse of force related to the use of restraints or treatment during his escorts and placement in the transport van. *See* IRO at 21. Even if there was an Eighth Amendment excessive force violation by any of the Team members, Plaintiff has not demonstrated that Lieutenant Rodriguez was aware of or had the opportunity to intervene in any misuse of force.

Eighth Amendment[.]" *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981) (internal quotation marks and citation omitted). Conditions of confinement that are merely "restrictive or even harsh," however, do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347.

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate is required to demonstrate an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or conditions that posed "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991). "*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304 (internal quotation marks omitted). Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that

20

today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, the defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. An allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with the mental state equivalent to "subjective recklessness" as that term is used in "criminal law." *Id.* at 840-41.

### Deliberate Indifference to Safety during Transport

To the extent that Plaintiff's claims of deliberate indifference encompass the Team's conduct causing him to fall, the Court concludes that genuine issues of fact exist about whether Defendants handled Plaintiff with negligence or with deliberate indifference to his risk of harm. *See* Defs. Ex. J, Rockville Sallyport, at 11:33:13 to 11:34:20 AM.

Plaintiff asserts that the Team subjected him to an unreasonable risk of serious harm to his health and safety by taking him on a "rough ride" without proper seat belting. *See* IRO at 23; Compl. at ¶¶ 78-83. He maintains that Lieutenant Rodriguez and Officers Negron, Dones, and Usluca were aware that he was not seat belted and experiencing difficulty during the return transport but failed to take any steps to ensure his safety. Compl. at ¶ 79.

In his declaration, Negron ventures that he did not offer to secure Plaintiff's seatbelt for the return trip to Corrigan due to Plaintiff's agitated state and concerns that Plaintiff could

assault the Team members. Defs. Ex. D, Negron Decl. at ¶ 26. He maintains that he saw Plaintiff

sitting on the cab bench banging his restraints and that the return transport from the Rockville

Courthouse to Corrigan was only two minutes longer than the transport from Corrigan to the

Rockville Courthouse. *Id.* at ¶¶ 29-30. Usluca sets forth that Plaintiff could have headbutted him

or spit on him if he had attempted to secure Plaintiff in the seatbelt. Defs. Ex. C, Usluca Decl. at

¶ 30. He explains further he assessed the banging and clanking during the transport as a normal

or regular occurrence during a restrained inmate's transport. *Id.* at ¶ 35. He denies that the trip

was delayed to torture Plaintiff or that it was filled with abrupt stops and quick accelerations. *Id.*

at ¶ 36.

The Court's initial review order recognized that "the failure to provide a seatbelt is not, in

itself [a] sufficiently serious" deprivation to meet the objective prong of the Eighth Amendment

standard because a seatbelt "is not a life[ ] necessity." *Jabbar v. Fischer,* 683 F.3d 54, 58 (2d Cir.

2012). But as the Court explained, the combination of conditions during the transport may have

exposed Plaintiff to an objectively serious risk of harm. IRO at 23 n.8. At present, the record

raises disputed issues of material fact regarding Plaintiff's conditions in the rear cab of the

transport van, the nature of the ride during transport, and the Team's state of mind in failing to

secure his seatbelt. With respect to Lieutenant Rodriguez, it is not disputed that Negron had a

telephone conversation with him, at which time Negron expressed that they could hear Plaintiff

banging in the rear cab. Pl. Rule 56(a)1 at ¶ 49; Defs. Rule 56(a)2 at ¶ 49. But there exists a

question of fact concerning whether Rodriguez was aware of any risk of harm to Plaintiff.

Based on this record, the Court cannot grant summary judgment on Plaintiff's Eighth

Amendment deliberate indifference claims against Officers Negron, Dones, and Usluca and

Lieutenant Rodriguez.

### Deliberate Indifference to Corrigan Conditions

Plaintiff asserts deliberate indifference by both Defendants Olson and Savoie arising from his conditions at Corrigan. IRO at 24. He claims that Defendant Olson deprived him of water in his cell on September 15, 2018; refused to provide him with dinner and subjected him to cell light to deprive him of his sleep on September 16, 2018; and later deprived him of his lunch and dinners from September 22 through 24, 2018; Compl. at ¶¶ 101-103, 109. He asserts that Officer Savoie deprived him of his lunch on September 21, 2018. *Id.* at ¶ 108.

Court's analyze claims asserting unconstitutional conditions of confinement based on severity and duration. *Wiley v. Kirkpatrick*, 801 F.3d 51, 66–68 (2d Cir. 2015). Thus, the Eighth Amendment is generally not violated by an inmate's temporary or brief exposures to such conditions. *Conquistador v. Syed*, No. 3:19-CV-1450 (KAD), 2022 WL 17821092, at *4 (D. Conn. Dec. 20, 2022)*.* In addition, prisoners are entitled to "nutritionally adequate food that is prepared and served under conditions [that] do not present an immediate danger to the health and well being of the inmates who consume it." *See Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks omitted).

Plaintiff has not adduced evidence to establish as a matter of law that he sustained conditions that were severe or of long duration due to lack of cell water, food deprivation, or excessive light illumination. Furthermore, Defendant Olson avers that he would not have turned off Plaintiff's water for punitive reasons, that he did not report to work on September 16, 2018, and that he does not recall speaking with Plaintiff on September 22, 2018. Defs. Ex. H, Olson Decl. at ¶¶ 18-25, ECF No. 144. And Defendant Savoie denies depriving Plaintiff of his lunch

and states that he was not authorized to do so. Defs. Ex. G, Savoie Decl. at ¶ 21, ECF No. 143.

This record raises disputed issues of fact that cannot be resolved on a motion for summary

judgment.

### 2. First Amendment Retaliation

Plaintiff asserts that Defendants Dones, Savoie, and Olson retaliated against him for

reporting the Team's misconduct. *See* IRO at 31; Compl. at ¶¶ 88, 100-106, 108-109. With

respect to Officer Dones, Plaintiff claims that he made threatening gestures and repeatedly made

statements such as "take it back or we will get at you." Pl. Rule 56(a)1 at ¶ 53. With respect to

Officers Savoie and Olson, Plaintiff claims that they took retaliatory action against him by

cutting off his cell water, denying him meals, throwing objects at him, harassing him verbally,

and interfering with his ability to sleep by keeping the lights on in his cell. Pl. Rule 56(a)1 at ¶

67.

Courts "'approach prisoner retaliation claims with skepticism and particular care, because

virtually any adverse action taken against a prisoner by a prison official—even those otherwise

not rising to the level of a constitutional violation—can be characterized as a constitutionally

proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis

v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)). To sustain a First Amendment retaliation claim, a

plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the

defendant took adverse action against the plaintiff, and (3) that there was a causal connection

between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d

Cir. 2004).

If the plaintiff's case satisfies these elements, a defendant must show by a preponderance

of the evidence that defendant would have taken the same adverse action against the plaintiff even in the absence of the protected conduct. *Mount Health Sch. Distr. v. Doyle*, 429 U.S. 274, 287 (1977)); *see Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) ("Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without improper motivation the alleged retaliatory action would have occurred.").

Defendants do not dispute that Plaintiff exercised his protected rights under the First Amendment when he complained about his treatment by the Team. Defs. Mem. at 21. Defendants challenge Plaintiff's retaliation claims as to the second element, adverse action. "[O]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted). Verbal threats may constitute adverse conduct if the threats are sufficiently specific and direct. *See, e.g.*, *Ford v. Palmer*, 539 F. App'x 5, 7 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where a corrections officer threatened to poison the plaintiff in retaliation for filing grievances); *Quezada v. Roy*, No. 14 CIV. 4056 CM, 2015 WL 5970355, at *21–23 (S.D.N.Y. Oct. 13, 2015) ("The line between de minimis verbal harassment and retaliatory adverse action . . . hinge[s] on the specificity and seriousness of the words used; 'The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights.'") (quoting *Mateo v. Fischer,* 682 F.Supp.2d 423, 434 (S.D.N.Y. 2010) (collecting cases)).

Here, Plaintiff has not adduced evidence to demonstrate that any Defendant issued specific verbal threats that rose to level of adverse action. In addition, Officers Olson and Savoie

both deny involvement with the alleged retaliatory conduct. Defs. Ex. G, Savoie Decl. at ¶¶ 6, 21-24; Defs. Ex. H, Olson Decl. at ¶¶ 18-26.

Thus, the Court must deny Plaintiff's motion for summary judgment on his First Amendment retaliation claims.

### 3.    State Law Claims

Plaintiff is proceeding on state law claims arising from his assault and battery and Defendants' wanton, malicious or reckless conduct. Initial Review Order, ECF No. 13; Order, ECF No. 151. At the time Plaintiff filed his motion for summary judgment, the Court had not yet issued its order to permit Plaintiff's state law claim of wanton, malicious or recklessness conduct to proceed. Thus, on this motion the Court considers only whether Plaintiff has established as matter of law that Defendants are liable for assault and battery.

Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . and (b) a harmful contact with the person of the other directly or indirectly results." *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (citing Restatement (Second), Torts § 13 (1965)). "Liability for assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) the other is thereby put in such imminent apprehension." *Id.* To "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972). A defendant may also be liable for aiding and abetting with an assault and battery. *See Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* 739 F. Supp. 2d 109, 121 (D. Conn. 2010) ("what must be proven for aider-abettor liability is that the individual gave substantial assistance to the tortfeasor in carrying out

26

the tort with the knowledge—or reckless indifference to the possibility—that the assistance would aid in carrying out that tort").

It is not disputed that Plaintiff suffered injuries and required medical assistance and was placed on a concussion watch after the transport returned to Corrigan. Pl. Rule 56(a)1 at ¶¶ 54-55. To the extent it shows Defendants' handling Plaintiff while in the Rockville Courthouse, the Rockville surveillance footage fails establish as a matter of law that Defendants committed any assault and battery because it fails to show definitively whether their application of force was unlawful. *See* Defs. Ex. J. Thus, the record raises questions of material fact that preclude entry of summary judgment in Plaintiff's favor on his assault and battery claims.

### C.    Plaintiff's Motion for Spoliation Sanctions [ECF No. 67]

Plaintiff claims that Defendants (and nondefendants DOC and FOIA Liaison Bower) violated a duty to preserve video footage of the Corrigan A/P area and his Corrigan Restrictive Housing Unit ("RHU") that would support his retaliation claims against Defendant Dones, Olson, and Savoie. Mot. for Spoliat., ECF No. 67.

### 1.    Background

For a video preservation request, Directive 6.9(10)(B)(1) &(2) provides that a "requestor shall make his/her request as soon as possible to ensure the request is received by the Unit Administrator or designee within thirty (30) days of the recording date as outlined in A.D. 4.7, Records Retention" and "[t]he request shall include the date, time, location, description of video and explanation for the requested video."[15]

---

[15] Under Directive 6.9(7)(E)(3), video evidence "shall be retained in an area designated by the Unit Administrator" and "[o]nly personnel designated by the Unit Administrator or higher authority shall have access to the video storage area."

On September 16, 2018, Plaintiff requested video of the following:

1. All A/P cameras on 9 13 18 for 12:00 pm – 2:00 pm,;
2. All medical cameras on 9 13 18 for 5:45 pm – 6:15 pm;
3. All medical cameras on 9.14 18 for 9:00 am – 11:00 pm; [and]
4. Hand held video of escort from med. to RHU on 9 14 16

Pl. Ex. B, ECF No. 67-1 at 19.

On September 26, 2018, FOIA Liaison Bowers issued a response denying Plaintiff's

FOIA request under Administrative Directive 6.9 for "failure to state description [and]

expl[a]nation." *Id.* Bowers also provided Plaintiff with a copy of Administrative Directive 6.9

and instructed him to resubmit his request with additional information. Pl. Ex. C, ECF No 67-1 at

21.

In another request dated September 16, 2018, Plaintiff asserted essentially the same

requests for video preservation in addition to preservation for "All RHU cameras on 9.14.18 for

10:00 am – 2:00 pm; [and] All RHU cameras on 9.15.18 for 11:00 am – 3:00 pm." Pl. Ex. D,

ECF No. 67-1 at 24.

After his transfer from Corrigan, Plaintiff filed another video preservation request dated

October 6, 2018. Pl. Ex. E, ECF No. 67-1 at 26; *see also* Pl. Mot. for Spoliat., ECF No. 67 at 3.

During this litigation, Plaintiff served discovery requests on Defendants' counsel for

production of the video footage of the A/P area on 9/13/2018 from 12 PM to 2 PM, the escort

from the Medical Unit to the RHU on 9/14/2018, and all preserved video files for the Corrigan

RHU from 9/14/2018 to 9/26/2018. Defs. Opp., ECF No. 78 at 4. Defendants' counsel first

indicated that the video footage was believed to exist but later stated that DOC confirmed that

the videos did not, in fact, exist. *Id.*

Plaintiff now requests that this spoliation of evidence be remedied through a favorable

28

ruling on his motion for summary judgment, an adverse inference instruction, an award of costs and fees, or other appropriate relief.

### 2.      Discussion

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted). "A party seeking sanctions for spoliation of evidence must establish the following three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim . . . such that a reasonable trier of fact could find that it would support that claim." *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted). If the moving party proves each of these elements, a district court may instruct the jury that it may or that it must draw an adverse inference against the spoliator. Such a sanction would "serve the threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (citation and internal quotation marks omitted).

A court may sanction a party if electronically stored information ("ESI") "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to

take reasonable steps to preserve it." Fed. R. Civ. P. 37(e)(2).[16] If prejudice results from loss of

that ESI, a court may "order measures no greater than necessary to cure the prejudice." Fed. R.

Civ. P. 37(e)(1). And, if a party "acted with the intent to deprive another party of the

information's use in the litigation," the court may "presume that the lost information was

unfavorable" to the other party, instruct the jury on such an adverse inference, or "dismiss the

action." Fed. R. Civ. P. 37(e)(2).[17]

As the movant, Plaintiff bears the burden to demonstrate that any electronically stored

information ("ESI")—such as the requested video footage—was intentionally destroyed in order

to deprive him of its use in this litigation.

### Preservation Duty

Defendants claim that the individual Defendants, who are being sued in their individual

capacities, had no preservation duty as they did not have control over the video footage and were

not aware of Plaintiff's preservation requests, which were handled by FOIA Liaison Bowers.

Defs. Opp. at 8-9, ECF No. 78. "The obligation to preserve evidence arises when the party has

notice that the evidence is relevant to litigation or when a party should have known that the

evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436

---

[16] A court has authority to impose sanctions under Rule 37 of the Federal Rules of Civil Procedure or in other instances under the Court's inherent power to manage its own affairs. *See Residential Funding,* 306 F.3d at 106–07.

[17] Rule 37(e)(1) provides: "If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through the additional discovery, the court (1) upon finding prejudice to another party from the loss of the information, may order measures no greater than necessary to cure the prejudice" caused by the spoliation. Under Rule 37(e)(2), "only upon finding that the party acted with the intent to deprive another party of the information's use in litigation" may the court "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume that the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

(2d Cir. 2001) (citing *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998) (the obligation arises "most commonly when suit has already been filed [. . . ] but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation")). When the obligation to preserve is triggered, the party must "do more than refrain from intentionally destroying relevant evidence; the litigant must also 'take affirmative steps to prevent inadvertent spoliation.'" *Skyline Steel, LLC v. PilePro, LLC*, 101 F.Supp.3d 394, 408 (S.D.N.Y. 2015) (citing *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010)). When a party has a routine document retention and destruction policy, "it must suspend it[ . . .] and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

It is unclear whether Defendants Dones, Savoie and Olson had sufficient notice of a retaliation claim to trigger a duty to preserve the requested video footage. However, even if they had a preservation duty, the record fails to support Plaintiff's request for spoliation sanctions.

### Culpable State of Mind

Plaintiff has not adduced evidence that his requested video footage was intentionally destroyed to deprive him of its use in this litigation. *See Prelvukaj v. Naselli*, 2023 WL 3570659, at *5 (E.D.N.Y. May 18, 2023) (noting loss of evidence occurs along continuum of fault ranging from negligence to intentional conduct). Again, only proof of intentional spoliation would authorize the types of sanctions Plaintiff is requesting, Fed. R. Civ. P. 37(e)(2), and Plaintiff has failed to point to any evidence in the record suggesting that these defendants intentionally deprived him of the video footage at issue. To the extent that his video preservation requests were lost or erroneously denied by the FOIA Liaison, such conduct would amount only to

negligence. *See Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *6 (D. Conn. May 27, 2020) (state employee's failure in discharging her duties constitutes "simple negligence").

**Prejudice**

In addition, Plaintiff has not substantiated that he will incur prejudice resulting from the loss of the Corrigan surveillance video footage. As the Corrigan surveillance footage would have lacked sound, the video footage may not have raised any inference that Defendants issued retaliatory verbal threats that rise to the level of adverse action. *See* Defs. Opp., ECF No. 78 at 12. Defendants have also submitted evidence suggesting that Savoie and Olson were not involved with the retaliatory conduct alleged by Plaintiff. *See* Defs. Ex. G, Savoie Decl.; Defs. Ex. H, Olson Decl.

Accordingly, the Court concludes that the record does not support Plaintiff's requests for the severe sanctions of dispositive rulings or an adverse inference. *See Brock v. Logsgon*, No. 19-CV-6082-FPG-MJP, 2022 WL 2948983, at *5 (W.D.N.Y. July 26, 2022) ("adverse inference sanction are severe sanctions that should be utilized only in cases of egregious conduct or for situations where the loss of the relevant evidence has so prejudiced the moving party that an adverse inference is necessary to restore the moving party to its pre-loss position.").

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment [ECF No. 101]. The Court construes Defendants' memorandum [ECF No. 139] as an opposition to Plaintiff's motion for summary judgment and DENIES their cross motion for summary judgment. Plaintiff's motion for spoliation sanction is DENIED.

SO ORDERED at Hartford, Connecticut this 6th day of November, 2023.

_____/s/_____
Michael P. Shea
United States District Judge