UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

JOE BALTAS,
    *Plaintiff*,

V.

DONES ET AL,
    *Defendants*.

NO. 3:22-CV-00038 (MPS)

MARCH 7, 2025

---

## RULING ON PLAINTIFF'S APPLICATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM AND MOTION TO DISCHARGE APPOINTED PRO BONO COUNSEL

In advance of an evidentiary hearing on the question of whether the plaintiff has exhausted his administrative remedies, the plaintiff, Joe Baltas, has moved for a writ of habeas corpus ad testificandum permitting him to be physically present at the evidentiary hearing. (*See Dones*, Doc. No. 210). In addition, the plaintiff has moved to discharge his appointed pro bono counsel and to proceed *pro se*. (*Id.* at Doc. No. 232).

The Court **GRANTS** the plaintiff's motion to terminate appointed pro bono counsel. The Court **DENIES** the plaintiff's application for writ of habeas corpus ad testificandum because of the significant security risks posed by his transport to Court and his physical presence in the courthouse. The Court will allow the plaintiff to attend and participate in the evidentiary hearing by videoconference.

**I.     BACKGROUND**

    **A.     Motion to Terminate Appointed Counsel**

1

The plaintiff in this case was appointed pro bono counsel on May 1, 2024. (*Dones*, Doc. No. 72). The plaintiff twice previously filed a motion for the appointment of new counsel. (*Id.* at Doc. Nos. 186, 191). The Court denied both motions, stating that the plaintiff could either choose to try the case *pro se* or continue to work with his appointed counsel. (*Id.* at Doc. Nos. 190, 192).

On January 10, 2025, the plaintiff himself filed a motion for permission to proceed as co-counsel. (*Dones*, Doc. No. 228). The Court denied the motion on January 14, 2025 because he had not "clearly and unequivocally discharged" his counsel, nor demonstrated any "need or justification for hybrid representation," and the Court was concerned that "granting his motion will lead to the filing of multiple contradictory filings that will then require further clarification." (*Id.* at Doc. No. 229). On February 10, 2025, the plaintiff filed a "notice of dismissal of appointed counsel" in which he stated he "unequivocally discharges, dismisses, and terminates Attorney Nathaniel Baber's representation, and enters his pro se appearance." (*Id.* at Doc. No. 232). On February 14, 2025, the plaintiff's appointed counsel Nathaniel Baber filed a response to the plaintiff's notice indicating that he did not object to the plaintiff's notice of dismissal, and that, although he had faithfully executed his obligations as pro bono counsel, the attorney-client relationship had broken down irretrievably and it appeared the plaintiff was prepared to proceed without counsel. (*Id.* at Doc. No. 234).

**B.      Application for Writ of Habeas Corpus Ad Testificandum**

On December 16, 2024, the Court (Shea, J.) held a telephonic status conference in *Baltas v. Dones et al* (*Dones*), No. 3:22-CV-00038 (MPS). (*Dones*, Doc. No. 200). Following the conference, the Court issued a notice in *Baltas v. Erfe et al* (*Erfe*), No. 3:19-CV-1820 (MPS), a separate case involving the same plaintiff, indicating that, at the status conference in the *Dones* case, the defendants "raised security concerns about transporting Mr. Baltas to court for the

upcoming trial in that case." *Erfe*, Doc. No. 352. Additionally, the Court's notice in *Erfe* indicated that the defendants in the *Dones* case informed the Court of a recent decision in *Baltas v. Frenis et al* (*Frenis*), No. 3:18-CV-01168 (VAB), another separate case involving the same plaintiff, in which Judge Bolden denied the plaintiff's motion to compel his physical presence at trial because of the "serious safety concerns" and "alleged prior assaults on [Department of Corrections'] staff, including during transport to court proceedings." *Frenis*, Doc. No. 379 at 8.

As a result, in the *Dones* case, the Court ordered the plaintiff to move for a writ of habeas corpus ad testificandum by December 17, 2024 so the plaintiff could physically attend the upcoming trial, and directed the defendants to file any objection to the motion by December 19, 2024. (*Dones*, Doc. No. 199). In the *Erfe* case, the Court invited counsel to respond to the submissions in the *Dones* case and Judge Bolden's ruling in *Frenis* by December 23, 2024. *Erfe*, Doc. No. 352.

On December 17, 2024, pursuant to the Court's order, the plaintiff filed a petition for a writ of habeas corpus ad testificandum to attend jury selection and the upcoming trial in person. (*Dones*, Doc. No. 201). On December 18, 2024, the Court ordered the defendants to submit briefing to address what type of video or teleconferencing arrangements would be made if the plaintiff were to participate in the trial remotely. (*Id.* at Doc. No. 202). The Court further instructed the defendants to address the extent to which the plaintiff would have access to live, video-conferencing technology, how the plaintiff's correctional facility could ensure he would be able to communicate with his attorney throughout the trial and during breaks in the proceedings, and which specific technologies would be used so that the Court could determine their compatibility with courtroom systems. (*Id.*). On December 19, 2024, the defendants filed an objection to the plaintiff's application for a writ of habeas corpus (*id.* at Doc. No. 203) and a supplemental response

3

to the Court's order. (*Id.* at Doc. No. 204). The same day, the Court scheduled an evidentiary hearing on exhaustion for January 14, 2025 and instructed the plaintiff to apply for a writ of habeas corpus ad testificandum if he wished to attend the evidentiary hearing in person. (*Id.* at Doc. No. 205). The plaintiff filed his application on December 31, 2024. (*Id.* at Doc. No. 210).

On December 23, 2024, in the *Erfe* case, the plaintiff filed a motion for a writ of habeas corpus ad testificandum for trial and a supporting memorandum of law. *Erfe*, Doc. Nos. 356, 357. The same day, the defendants in *Erfe* filed a response to the plaintiff's motion, indicating that they join in the previous responses provided by the *Dones* defendants. *Erfe*, Doc. No. 358 at 1 (citing *Dones*, Doc. Nos. 203, 204). As a result, the briefing on the issue of the plaintiff's physical presence spans across both cases, and the Court relies on the briefing submitted in both cases in reaching its decision.[1]

On December 29, 2024, the court scheduled a joint video conference hearing with the parties in this case and in *Erfe*. (*Dones*, Doc. No. 209); *Erfe*, Doc. No. 360. The purpose of the hearing was to address whether the plaintiff should attend his upcoming hearings and trials in these cases in person or remotely, and to what extent the plaintiff should be restrained if he did appear in person. (*Dones*, Doc. No. 209); *Erfe*, Doc. No. 360.

On January 6, 2025, the Court held a video conference hearing on these issues. (*Dones*, Doc. No. 222); *Erfe*, Doc. No. 366. On January 8, 2025, the Court issued an order indicating that it had to postpone the exhaustion hearings in both cases. (*Dones*, Doc. No. 225); *Erfe*, Doc. No. 369.

---

[1] At the January 6, 2025 joint video conference to discuss the plaintiff's physical presence at the courthouse in both the *Erfe* and *Dones* cases, the plaintiff's counsel in *Erfe*, William Bloss, stated that there was not an application in the *Erfe* case to proceed remotely as there was in the *Dones* case. The Court (Shea, J.) acknowledged that fact but said to "consider the issue on the table" in both cases. (*Dones*, Doc. No. 237 (Certified Transcript) at 5).

4

### C. Matters Referred to the Magistrate Judge

On February 14, 2025, the case was referred to the undersigned "to hold an evidentiary hearing and make appropriate findings regarding [the] [d]efendants' exhaustion defense." (*Dones*, Doc. No. 233). The undersigned was also referred "any motions that have been or may be filed and any procedural determinations regarding this hearing—including whether Mr. Baltas should be permitted to proceed pro se . . . ." (*Id.*). Finally, the referral stated the undersigned "is not bound by any prior determinations or comments [the Court] may have made regarding procedural matters pertaining to this hearing, including, for example, whether Mr. Baltas' physical presence at the hearing is necessary or advisable, as circumstances regarding these decisions may have changed." (*Id.*). The referral explicitly granted the undersigned the "appropriate authority to enable [the undersigned] to make these determinations in the first instance," and vacated any prior determinations regarding these issues. (*Id.*).

## II. <u>LEGAL STANDARD</u>

A petition for a writ of habeas corpus ad testificandum asks a federal court to compel a custodian to produce a prisoner for a court appearance. *Atkins v. City of New York*, 856 F. Supp. 755, 757 (E.D.N.Y. 1994); 28 U.S.C. § 2241(c)(5); 28 U.S.C. § 1651(a). Incarcerated individuals have the right to meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). However, "[i]t is well settled that a plaintiff prisoner does not have a constitutional right to be physically present at the jury trial of his civil rights claim." *Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 31 (D. Conn. 2009). "The decision to issue a writ of habeas corpus *ad testificandum* is committed to the sound discretion of the district court." *Atkins*, 856 F. Supp. At 757.

In determining whether to issue a writ of habeas corpus ad testificandum, the Court considers several factors, including:

> [W]hether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted and whether reasonable alternatives to the inmate's attendance exist which would safety the needs of the litigants.

*Twitty*, 712 F. Supp. 2d at 32. In other words, the Court must "weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Id.* (quoting *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005)). Because compliance with writs of habeas corpus ad testificandum can be costly, the Second Circuit has encouraged district courts to "consider alternatives to reduce the burdens compliance imposes," including "in some cases, taking testimony at the prison . . . ." *Rivera v. Santirocco*, 814 F.2d 859, 864 n.8 (2d Cir. 1987). "The party seeking a writ of habeas corpus ad testificandum bears the burden of demonstrating necessity." *Davidson v. Desai*, 964 F.3d 122, 131 (2d Cir. 2020). Although the instant matter concerns the plaintiff's physical presence at an evidentiary hearing and not his trial, the Court must nevertheless "be alert to avoid practices that may undermine the fairness of the factfinding process." *Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir. 1995).

## III. DISCUSSION

The plaintiff has filed an application for a writ of habeas corpus to allow his physical presence at the evidentiary hearing which will address the factual issue of whether he has exhausted his administrative remedies. (*Dones*, Doc. No. 210). He has also filed a "Notice of "Dismissal of Appointed Counsel," which the court construes as a motion to terminate his appointed pro bono counsel and to proceed *pro se*. (*Id.* at Doc. No. 232). The Court has reviewed the relevant filings in both *Erfe* and *Dones* and the transcript of the hearing on the issue of the plaintiff's physical presence at the exhaustion hearings. (*Dones*, Doc. No. 237); *Erfe*, Doc. No. 384.

### A.     Motion To Discharge Appointed Counsel and To Proceed *Pro Se*

"When good cause is shown, (e.g., substantial disagreement between the party and the appointed attorney on litigation strategy), the appointed attorney shall be discharged from further representation of the party." D. Conn. L. Civ. R. 83.10(i). In these cases, the Court may appoint another attorney or deny a further appointment. *Id.*

Based on the plaintiff's motion and Attorney Baber's response, the Court finds there is good cause to discharge Attorney Baber from this appointment. The plaintiff discusses numerous communication issues and disagreements with Attorney Baber's litigation strategies. Attorney Baber states in his response that he has faithfully executed his obligations as pro bono counsel and expended a significant amount of time and effort on the plaintiff's case, but that the attorney-client relationship has broken down irretrievably.

The plaintiff's motion to discharge appointed counsel is therefore granted, and Attorney Baber is withdrawn from the case.

### B.     Application for Writ of Habeas Corpus Ad Testificandum

The defendants argue that the plaintiff's "propensity for violence, documented history of acting on threats to inflict bodily harm on correctional staff and his refusal to adhere to basic prison rules and protocols outweigh any right to be physically present in court." (*Dones*, Doc. No. 203 at 3). In support of their position, the defendants have submitted a declaration from David Snyder, the Connecticut Department of Correction's ("CT DOC's") Director of Offender Classification and Population Management and Director of Sentence Calculation and Interstate Management. (*Dones*, Doc. 203-1). Mr. Snyder's declaration explains that the plaintiff is currently serving a 95-year and 6-month sentence, which includes convictions for murder, assault, weapon in an institution and contempt of court; two of the incidents underlying these convictions occurred while

7

the plaintiff was incarcerated. (*Id.* at 2). Additionally, the plaintiff is a defendant in two pending criminal cases related to alleged attacks on CT DOC correctional officers, including an incident on August 22, 2023 where the plaintiff allegedly used a filed-down toothbrush to assault two correctional officers, stabbing one of them in the neck. (*Id.* at 3). While incarcerated, the plaintiff has received 241 disciplinary reports, including 65 since the beginning of 2024. (*Id.* at 3-4).

The plaintiff argues in response that videoconferencing is not a reasonable alternative to the plaintiff's physical presence in court. *Erfe*, Doc. No. 354 at 7. Specifically, the plaintiff argues that videoconferencing is inadequate here because the Rhode Island Department of Corrections is only able to accommodate two-hour videoconferences per day, and this exhaustion hearing will likely require "several hours and a full-day of the Court's time." *Id.* at 8. Moreover, the evidentiary hearing depends on the Court's assessment of the plaintiff's testimony and physical evidence, which will be difficult to accomplish over video. *Id.* at 7-8.

The Court agrees with the defendants. As to whether the prisoner's presence will substantially further the resolution of the case, the plaintiff undoubtedly has a significant interest in physically attending the evidentiary hearing to provide his testimony and present his physical evidence, and the outcome of the exhaustion hearing may be dispositive.

However, as to the security risks presented by the prisoner's presence, the CT DOC has raised significant security concerns and cited numerous incidents of alleged prior assaults on DOC staff, particularly during transport to court proceedings.

As to the expense of the prisoner's transportation and safekeeping, the Court agrees with the CT DOC that it is neither cost effective nor an efficient use of resources to transport the plaintiff to Connecticut for the exhaustion hearing.

As to whether the suit can be stayed until the prisoner is released without prejudice to the plaintiff's claims, the *Dones* and *Erfe* cases have been pending since 2022 and 2019, respectively, the plaintiff is serving a 95-year and 6-month total sentence, and the plaintiff is not eligible for parole. Thus, the plaintiff is not expected to be released before the resolution of this suit, and the suit cannot be postponed to allow for other alternatives.

Finally, as to whether reasonable alternatives exist that would satisfy the needs of the litigants, videoconferencing for two hours at a time is a reasonable alternative in this case. *See Frenis*, Doc. No. 379 at 8. The Court has, on numerous occasions, conducted evidentiary hearings and even a bench trial via videoconferencing, such that the undersigned is confident it can assess the credibility of the witnesses and the evidence through the remote platform. *See, e.g.*, *Armstrong v. Martocchio*, 3:18-CV-580 (RMS). Moreover, the two-hour limitation will not interfere with the Court's ability to conduct the hearing because the Court will be able to conduct the hearing over multiple days if necessary. Accordingly, the Court denies the plaintiff's motion for a writ of habeas corpus compelling his physical presence at the evidentiary hearing addressing whether he has exhausted his administrative remedies (*Dones*, Doc. No. 210). This decision only applies to the evidentiary hearing regarding exhaustion and to no other evidentiary hearing or trial in this case.

### IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** the plaintiff's motion to discharge appointed pro bono counsel. Attorney Baber is withdrawn from this case, and the plaintiff shall proceed *pro se*. The Court thanks Attorney Baber for his service.

The Court **DENIES** the plaintiff's motion for a writ of habeas corpus compelling his physical presence at the evidentiary hearing on exhaustion. (*Dones*, Doc. No. 210). The Court will allow the plaintiff to attend the hearing by videoconference.

It is so ordered this 7th day of March, at New Haven, Connecticut.

      /s/ Robert M. Spector, U.S.M.J.
ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE